UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ALESHIA JOYCE STRONG,

      Plaintiff,

v.                                                  CASE NO. 3:14-cv-1434-J-34JBT

CAROLYN W. COLVIN,
Acting Commissioner of the
Social Security Administration,

      Defendant.
_____/

## **REPORT AND RECOMMENDATION**[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying her applications dated November 2, 2010 for a Period of Disability, Disability Insurance Benefits, and Supplemental Security Income. Hearings were held before the assigned Administrative Law Judge ("ALJ") on June 27, 2012 (Tr. 61–107), September 24, 2012 (Tr. 108–14), and February 11, 2013 (Tr. 42–60). In a decision dated April 15, 2013, the ALJ found that Plaintiff had not been under a disability from August 28, 2009, the alleged onset date, through the

---

[1] "Within 14 days after being served with a copy of [this Report and Recommendation], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id.* A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Local Rule 6.02.

date of decision.  (Tr. 24–35.)

Plaintiff has exhausted her available administrative remedies and the case is properly before the Court.  The Court has reviewed the record, the briefs, and the applicable law.  For the reasons stated herein, the undersigned respectfully **RECOMMENDS** that the Commissioner's decision be **AFFIRMED**.

**I.     Issues on Appeal**

Plaintiff raises three issues on appeal, which she frames as follows:

> I.     The [ALJ] failed to apply the correct legal standards to the medical opinions of record.
>
> II.    The ALJ erred by failing to consider Ms. Strong's third party statements.
>
> III.   The ALJ failed to apply the correct legal standards to Ms. Strong's testimony.

(Doc. 14 at 2.)  The undersigned will address each issue in turn.

**II.    Standard of Review**

As the Eleventh Circuit has stated:

> In Social Security appeals, we must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards. Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.  We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].

*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citations and quotations omitted).  "With respect to the Commissioner's legal conclusions, however, our review is *de novo*."  *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th

Cir. 2002).

### III. The ALJ's Decision

At step two of the sequential evaluation process,[2] the ALJ found that Plaintiff had the following severe impairments:

> HIV (controlled with medications), history of tachycardia and anemia (controlled with medications), mild pulmonary hypertension, history of hyperthyroidism, and as of December 20, 2011, major depressive disorder, anxiety disorder, dysthymic disorder and panic disorder without agoraphobia.[3]

(Tr. 26.)

Prior to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work, with additional restrictions, including the following mental restrictions:

> She is limited to work involving simple, routine and repetitive tasks performed in a work environment free of fast-paced production requirements and involving only simple work related decisions and routine workplace changes. The claimant may have only occasional interaction with the public and coworkers. She is limited to only occasional supervision.

(Tr. 28.)

At step four, the ALJ found that Plaintiff was capable of performing her past relevant work as an "[a]ssembler, [p]roduction." (Tr. 33–34.) As an alternative

---

[2] The sequential evaluation process is described in the ALJ's decision. (Tr. 25–26.)

[3] The December 20, 2011 date is when Plaintiff first saw her treating psychologist, Dr. Ann Usitalo. (Tr. 800–01.)

finding, at step five, the ALJ found that Plaintiff was also able to perform other work existing in significant numbers in the national economy. (Tr. 34–35.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. 35.)

### IV.  Analysis

#### A.  Medical Opinions

Plaintiff first argues that the ALJ "failed to apply the correct legal standards" to the opinions of Dr. Ann Usitalo, Plaintiff's treating psychologist, Dr. Stephanie Sims, Plaintiff's treating psychiatrist, and Dr. Alfred Jonas, a non-treating, non-examining psychiatrist who reviewed records, provided a medical source statement, and testified at a hearing. (Doc. 14 at 12–18, Tr. 839–46, Tr. 42–53.) The undersigned will address each physician in turn.

##### 1.  Treating Physician Standard

To discount the opinions of a treating doctor, the ALJ has to provide "good cause." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004). Good cause to discount a treating doctor's opinion exists when "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* at 1240–41.

##### 2.  Dr. Usitalo

After reviewing Dr. Usitalo's treatment notes, the ALJ addressed her opinions as follows:

> On June 26, 2012, Ann Usitalo, Ph.D., who is a licensed

4

> psychologist, wrote a letter regarding the claimant. Dr. Usitalo said the claimant had participated in psychotherapy since December 2011. Dr. Usitalo said the claimant was conscientious and had kept all appointments. Dr. Usitalo said the claimant's diagnoses include, major depressive disorder, recurrent, severe, dysthymic disorder, anxiety disorder, and panic disorder without agoraphobia. Dr. Usitalo said the claimant had improved with medication and therapy. Dr. Usitalo opined that the claimant could not maintain full time employment due to severe, debilitating anxiety. She opined that the claimant would not be able to work in the foreseeable future. (Exhibit 14F) Limited weight is accorded to this opinion because the treatment records at Exhibit 21 F indicate GAF scores between 50-60, which indicates only moderate symptoms. The treatment records, which document only moderate symptoms, do not support an inability to work. In June 2012, the claimant expressed a desire to return to work, and Dr. Usitalo did not discourage the claimant from pursuing employment. The claimant also reported that she was caring for her daughter and her nephew, which Dr. Usitalo did not discourage.
>
> On September 21, 2012, Dr. Usitalo wrote another letter on the claimant's behalf. Dr. Usitalo said she disagreed with Dr. Sanchez's opinion that the claimant could return to work without limitations. Dr. Usitalo said the claimant is making progress in therapy. Dr. Usitalo said she hoped the claimant would be able to return to work full time in the future. (Exhibit 21F) Little weight is accorded to this opinion because it contradicts the treatment notes in which Dr. Usitalo encouraged the claimant to take steps towards reentering the workforce.

(Tr. 31–32.)

The undersigned recommends that the ALJ articulated good cause, supported by substantial evidence, for according "limited" and "little" weight to Dr. Usitalo's opinions. Dr. Usitalo's treatment notes provide substantial evidence for

5

the ALJ's conclusion that, overall, Plaintiff's symptoms were only moderate. As the ALJ had previously discussed in the decision:

> The claimant participated in psychotherapy with Ann Usitalo, Ph.D. During therapy, the claimant said she was planning a birthday party for her daughter. The claimant denied any side effects from her medication. On May 22, 2012, the claimant said that she felt overwhelmed caring for her daughter and her nephew when her sister worked. The claimant said she wanted to return to work. The claimant denied any significant problems with depression or anxiety. Dr. Usitalo recommended that the claimant consider volunteer work and or taking a class to slowly reenter the workforce. On June 11, 2012, the claimant said that since school was out, she was responsible for caring for her daughter and her nephew. The claimant said she was doing well. She said she wanted to reenter the work force, but was anxious because she had been out of work for so long. On June 26, 2012, the claimant said she was concerned that her heart raced following exercise. On July 3, 2012, the claimant said she wanted to live independently with her daughter. On September 18, 2012, the claimant reported that she limited her social contacts to family and close friends. She said she felt that she could create an independent life for herself and her daughter. The claimant was appropriately dressed. The claimant's mood and affect were euthymic. Her attention, concentration and memory were adequate. Insight and judgment were fair. Dr. Usitalo diagnosed the claimant with major depressive disorder, recurrent, severe, in partial remission, dysthymic disorder, anxiety disorder not otherwise specified and panic disorder, without agoraphobia. Dr. Usitalo assigned a GAF of 60. (Exhibit 21F)

(Tr. 30–31) (footnote omitted).[4]

---

[4] The Global Assessment of Functioning ("GAF") scale generally provides in relevant part that a score of 41 through 50 indicates serious symptoms or any serious impairment in social, occupational, or school functioning; a score of 51 through 60

Regarding Dr. Usitalo's June 26, 2012 opinions, Plaintiff first argues that the ALJ erred in stating that Plaintiff's GAF scores between 50 and 60 indicated only moderate symptoms. Although Plaintiff is technically correct that a score of 50 still indicates serious symptoms, it is clear that the ALJ understood that because she stated in her decision that "a GAF between 50-41 indicates serious symptoms." (Tr. 31 n.2.) Although the ALJ technically misspoke, her view that, overall, Plaintiff's GAF scores indicated only moderate symptoms, is supported by substantial evidence. For example, Dr. Usitalo's records dated December 20, 2011, December 29, 2011, January 4, 2012, June 26, 2012, July 3, 2012, and August 14, 2012, all indicate that Plaintiff's GAF score was 50. (Tr. 801, 797, 799, 821, 826, 832.) However, Dr. Usitalo's records from March 5, 2012, March 26, 2012, April 12, 2012, April 23, 2012, May 7, 2012, May 22, 2012, June 11, 2012, August 30, 2012, and September 18, 2012, all indicate that Plaintiff's GAF score was 60, which is at the high end of moderate symptoms. (Tr. 804, 806, 808, 810, 812, 816, 818, 835, 838.) Plaintiff's July 25, 2012 GAF score was 55. (Tr. 829.) Thus, even viewing Plaintiff's GAF scores in isolation, the ALJ's conclusion that, overall, they indicate moderate symptoms, is supported by substantial evidence.

Moreover, "a GAF score does not itself necessarily reveal a particular type of limitation and is not an assessment of a claimant's ability to work." *Ward v.*

---

indicates moderate symptoms or moderate difficulty in such functioning; and a score of 61 through 70 indicates mild symptoms or some difficulty in such functioning. Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* (*DSM-IV*) 34 (4th ed. 2000).

7

*Astrue*, Case No. 3:00-cv-1137-J-HTS, 2008 WL 1994978, at *3 (M.D. Fla. May 8, 2008) (internal quotations omitted). *See also Parsons v. Astrue*, Case No. 5:06cv217/RS-EMT, 2008 WL 539060, at *7 (N.D. Fla. Feb. 22, 2008) ("[A] GAF score, without evidence that it impaired the ability to work, does not establish an impairment."). As the ALJ stated, there were a number of other indications in Dr. Usitalo's records that Plaintiff's symptoms were only moderate, such as her ability to care for her daughter and nephew, her statements that she was doing well, her denial of significant problems with depression or anxiety, her desire to work, and Dr. Usitalo's encouragement that Plaintiff take steps toward working. Therefore, to the extent the ALJ technically erred in referring to a GAF score of 50 as indicating only moderate symptoms, the undersigned recommends that any such error is harmless. *See Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x 901, 903 (11th Cir. 2011) (applying the harmless error doctrine to social security cases).

Plaintiff also takes issue with the other reasons articulated by the ALJ for according Dr. Usitalo's June 26, 2012 opinion limited weight. For example, Plaintiff argues that "[h]aving a desire to work and actually being able to work are two different things." (Doc. 14 at 14.) Although the additional reasons given by the ALJ for discounting Dr. Usitalo's opinions do not necessarily conclusively establish that Plaintiff can work, such as the ability to care for her daughter and nephew, they are relevant, and thus, it is fair for the ALJ point them out. The undersigned recommends that the totality of reasons given by the ALJ constitute good cause. Moreover, the ALJ did not "fail to apply the correct legal standards," as Plaintiff

8

argues, and Plaintiff is simply asking the Court to reweigh the evidence, which the Court cannot do.

Plaintiff similarly attacks the ALJ's reasons for discounting Dr. Usitalo's September 21, 2012 opinions, which are similar to her June 26, 2012 opinions. The undersigned recommends that it was reasonable for the ALJ to view Dr. Usitalo's opinion that Plaintiff cannot work as inconsistent with her treatment records, in which she encouraged Plaintiff to proceed toward entering the work force. In addition, the ALJ's analysis regarding the September 21, 2012 opinions of Dr. Usitalo should be read in conjunction with her analysis of Dr. Usitalo's June 26, 2012 opinions. The undersigned recommends that collectively the ALJ articulated good cause, supported by substantial evidence, for discounting these opinions.

### 3.  Dr. Sims

Plaintiff next takes issue with the ALJ's analysis of the opinions of Dr. Sims. (Doc. 14 at 16–17.) In discounting Dr. Sims' opinions, the ALJ stated:

> On February 1, 2013, Stephanie Sims, M.D., who is the claimant's treating psychiatrist, completed a mental residual functional capacity assessment. Dr. Sims wrote that she had an initial evaluation with the claimant on December 7, 2012 and a follow up visit on February 1, 2013. Dr. Sims said the claimant is diagnosed with major depressive disorder and anxiety. She assigned a GAF of 50. Dr. Sims said the claimant's signs and symptoms include, anhedonia, decreased energy, mood disturbance, apprehensive expectation, and recurrent, severe panic attacks. Dr. Sims opined that the claimant would have noticeable difficulty performing several work like procedures on a competitive basis. Dr. Sims opined

9

> that the claimant could manage money. (Exhibit 24F) Little weight is accorded to this opinion because the opined GAF score of 50 is not reflective of ongoing treatment. Dr. Sims' treatment records show that the claimant was started on Celexa and found to be stable for outpatient treatment. Treatment records also show that the claimant's symptoms are moderate when she is compliant with ongoing treatment. (See, i.e., Exhibits 21F and 23F.)
>
> . . .
>
> Although Dr. Sims opined that the claimant is disabled, Dr. Sims has only seen the claimant twice. Additionally, Dr. Sims did not recommend that the claimant's child be removed from her custody due to significant symptoms. Dr. Sims did not initiate a Baker Act petition, and Dr. Sims did not recommend inpatient treatment. The initial evaluation and the subsequent follow up visit, two months later, are consistent with the finding that the claimant's symptoms are only moderate. The claimant has been in therapy with Dr. Usitalo since December 2011. Dr. Usitalo describes the claimant as compliant. The claimant's GAF scores are consistently at 60, and Dr. Usitalo notes that the claimant reports few symptoms of depression or anxiety. The totality of the evidence supports a finding that the claimant's symptoms are well controlled with medication and therapy when she is compliant with treatment.

(Tr. 32–33) (footnote omitted).

The undersigned recommends that the above reasons constitute good cause, supported by substantial evidence, for discounting the opinions of Dr. Sims. As the ALJ pointed out, Dr. Sims saw Plaintiff on only two occasions. As discussed by the ALJ, and as previously discussed herein, the more extensive treatment records of Dr. Usitalo provide substantial evidence for the ALJ's conclusion that overall Plaintiff exhibited only moderate symptoms of her mental disorders.

Plaintiff argues that the "ALJ disregarded Dr. Sims' opinion because she had only seen Ms. Strong two times." (Doc. 14 at 17.) The undersigned recommends that this argument be rejected. The ALJ did not "disregard" Dr. Sims' opinions; she addressed them and gave them little weight. In addition, Plaintiff again argues that the reasons given by the ALJ for discounting Dr. Sims' opinions do not necessarily mean that Plaintiff is not disabled, such as Plaintiff's ability to care for children. As previously stated, the reasons given do not need to definitively establish lack of disability; they need only to provide good cause for discounting the subject opinion. The undersigned recommends that the reasons given by the ALJ, including that Dr. Sims recommended only outpatient treatment and did not take more serious measures, are relevant, and provide good cause for discounting Dr. Sims' opinions.

### 4.   Dr. Jonas

Finally, Plaintiff argues that the ALJ erred in giving the opinions of Dr. Jonas substantial weight. (Doc. 14 at 17–18.) Regarding Dr. Jonas, the ALJ stated:

> On October 8, 2012, Alfred Jonas, M.D., who is the independent medical expert in this case, completed interrogatories and a mental residual functional capacity assessment. Dr. Jonas opined that the claimant's mental impairment is a dysthymic disorder versus a personality disorder. He opined that the claimant has mild to moderate difficulties in social functioning. Dr. Jonas wrote that the claimant's symptoms are mild and suggest a partial and longstanding social limitation. Dr. Jonas wrote that the claimant is on less than a full medication regimen for depression, and she is doing well according to her psychologist's notes. He opined that the claimant could work provided she had no contact with the public.

11

> He opined that the claimant has moderate limitations for interacting with the public. (Exhibit 22F) Substantial weight is accorded to this opinion because it is generally consistent with the medical evidence of record, which establishes no more than moderate mental health symptoms with ongoing treatment. However, the claimant's activities of daily living discussed herein, including exercise, friendships, and caring for two children, indicate an ability for occasional interaction with the general public.

(Tr. 32.)

"Generally, the opinions of examining or treating physicians are given more weight than non-examining or non-treating physicians." *Wainwright v. Comm'r of Soc. Sec. Admin.*, Case No. 06-15638, 2007 WL 708971, at *2 (11th Cir. Mar. 9, 2007). *See also Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984); 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1). However, "the ALJ may reject any medical opinion if the evidence supports a contrary finding." *Wainwright*, 2007 WL 708971, at *2. Furthermore, "[t]he ALJ is required to consider the opinions of non-examining state agency medical and psychological consultants because they 'are highly qualified physicians and psychologists, who are also experts in Social Security disability evaluation.'" *Milner v. Barnhart*, 275 F. App'x 947, 948 (11th Cir. 2008).

Having validly discounted the opinions of Drs. Usitalo and Sims, the ALJ could give substantial weight to the opinions of Dr. Jonas, even though he was not a treating or examining physician. *See Reed v. Comm'r of Soc. Sec.*, Case No. 2:12-cv-429-FtM-38DNF, 2013 WL 5186668, at *2 (M.D. Fla. Sept. 13, 2013)

12

("Additionally, where a consulting physician's opinion is more consistent with clinical evidence than the examining physician's opinion, the ALJ may accord greater weight to the consulting physician's opinion."). Plaintiff makes no specific argument why the ALJ could not do so, other than again arguing that the ALJ "disregarded" the opinions of Drs. Usitalo and Sims. (Doc. 14 at 18.) For the reasons previously discussed, the undersigned recommends that this argument be rejected, and that substantial evidence supports the ALJ's view that the medical evidence of record "establishes no more than moderate mental health symptoms with ongoing treatment."[5] (Tr. 32.) Thus, although the opinions of non-examining doctors, "when contrary to those of the examining physicians, are entitled to little weight, and *standing alone* do not constitute substantial evidence," *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987) (emphasis added), in this case Dr. Jonas' opinions did not stand alone, but were supported by the treatment notes and the record as a whole, under the substantial evidence standard of review.

## B. Third-Party Statements

Plaintiff next argues that the ALJ erred by failing to "consider" third-party statements of her mother, father, and sister. (Doc. 14 at 18–19.) The ALJ did not

---

[5] In considering the record as a whole, it is worth noting that Plaintiff was seen by Dr. Eduardo Sanchez for a psychiatric evaluation on July 23, 2012. (Tr. 744–48.) Dr. Sanchez opined that Plaintiff's GAF score was 85, which indicates absent or minimal symptoms and good functioning in all areas. (Tr. 745.) He also opined that Plaintiff had no work-related mental limitations. (Tr. 746–48.) The ALJ gave Dr. Sanchez's opinions "[l]imited weight . . . because the treatment records show that the claimant has severe mental impairments with moderate symptoms as discussed above." (Tr. 32.)

explicitly address these statements.  She did state, however: "The undersigned has carefully read the entire record regardless of whether a specific exhibit is mentioned."  (Tr. 29.)  For the reasons discussed herein, the undersigned recommends that Plaintiff's argument be rejected.

The Eleventh Circuit recently addressed the same issue in *Clyburn v. Commissioner, Social Security Administration*, and held:

> Nor did the ALJ err by not explicitly discussing statements contained in an affidavit by Clyburn's sister. Because the ALJ expressly rejected as not credible Clyburn's testimony about the severity of her pain and the extent of her limitations, he impliedly rejected the statements in the affidavit as well.

555 F. App'x 892, 894–95 (11th Cir. 2014).  *See also Allen v. Schweiker*, 642 F.2d 799, 801 (5th Cir. 1981) (finding that where "there was a clear, though perhaps implicit, rejection of the subjective testimony as to the disabling nature of [Plaintiff's] pain," the findings were "sufficient for [the] Court to determine the denial of benefits is supported by substantial evidence"); *East v. Barnhart*, 197 F. App'x 899, 901 n.3 (11th Cir. 2006) ("Because [Plaintiff's mother's] statements in the questionnaire duplicated and corroborated [Plaintiff's] testimony, which the ALJ explicitly found not credible, it is 'obvious' that the ALJ implicitly rejected [Plaintiff's mother's] statements.") (internal quotations omitted).

In this case, as in *Clyburn*, the ALJ explicitly rejected as not credible Plaintiff's testimony to the extent it was inconsistent with her treatment records and the record as a whole.  (Tr. 29, 33.)  The ALJ also thoroughly recounted Plaintiff's

14

testimony:

> Ms. Strong testified that she became ill in August 2009 and sought treatment. She said she tried to find work afterwards. The claimant said she tried to find work in administrative and graphic design positions. Ms. Strong said she is unable to work because she is drained most of the time. She said she sometimes "messes" on herself. The claimant said she sometimes wears adult diapers. The claimant said her medications cause side effects including diarrhea, headaches and sensitivity to sunlight. Ms. Strong said she could lift 10 pounds of sugar. She said she could not sit very long because her legs "freeze up." She said she could sit for 15-20 minutes. She said she could stand for 10-20 minutes. Ms. Strong testified that she has difficulty with her hands and arms. She said they shake, and she cannot hold a pen. She said she is primary caregiver for her eight-year-old daughter. The claimant said she lives with her parents. She said her bedroom and her daughter's bedroom are on the second floor. The claimant said she needs assistance bathing because she cannot stand in the shower for long or sit in the tub for long. Ms. Strong said she needs assistance with dressing. She said she is unable to concentrate long enough to watch a TV program. The claimant said she is able to use the microwave. She said she spends most of her time sleeping. She said her father takes care of her. She said her parents and her sister help her with her daughter. She said she is able to drive if someone is in the car with her.

(Tr. 29.)

Plaintiff argues that her family's statements "not only corroborate her testimony, but also provide additional information regarding her limitations." (Doc. 14 at 19.) However, Plaintiff does not specify what "additional information" these statements contain. A review of the statements shows that they are similar, if not substantially identical, to Plaintiff's testimony. (*See* Tr. 406–08.) For example, the

15

statements include descriptions of the help Plaintiff's family members provide her, including preparing meals, and caring for her child. (Tr. 406–08.) This is addressed in Plaintiff's testimony. (Tr. 83–84.) Moreover, even if there is any additional information in the statements, it is obvious that the ALJ would have rejected it to the extent it was inconsistent with the medical records. *See East*, 197 F. App'x at 901 n.3.

Plaintiff relies on *Lucas v. Sullivan*, 918 F.2d 1567 (11th Cir. 1990). In that case, the Eleventh Circuit, in remanding the case on other grounds, stated: "On remand the ALJ should state the weight he accords to each item of impairment evidence and the reasons for his decision to accept or reject that evidence, including all testimony presented at the previous hearing or any subsequent hearings." *Id.* at 1574. The undersigned recommends that this case is distinguishable for several reasons. First, it does not appear that this issue was an independent ground for reversal, as there were multiple other grounds. Second, the court specifically addressed hearing testimony, not merely unsworn written statements such as in the case at bar. Finally, the court had no need to address whether the error was harmless since it was remanding the case anyway. As shown by the other cases discussed herein, the Eleventh Circuit has recognized that the ALJ may implicitly reject the credibility of third-party statements by rejecting the credibility of Plaintiff. For all of these reasons, the undersigned recommends that the ALJ did not err in this regard, but if there was any error, it was harmless.

### C.     Plaintiff's Testimony

Finally, Plaintiff argues that the ALJ "failed to apply the correct legal standards" to her testimony. (Doc. 14 at 20–21.) The undersigned recommends that this argument be rejected as well. "If the ALJ decides not to credit a claimant's testimony as to her pain, he must articulate explicit and adequate reasons for doing so." *Foote v. Chater*, 67 F.3d 1553, 1561–62 (11th Cir. 1995). "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Id.* at 1562. Plaintiff's argument regarding this issue is partially a reiteration of her arguments regarding the first two issues. The undersigned has already recommended that these arguments be rejected. Plaintiff also specifically takes issue with the ALJ's statement that "[t]he claimant testified that she could only sit for a few minutes; however, the hearing lasted for nearly an hour, and the claimant sat for her hearing." (Tr. 33.) Plaintiff argues that "the ALJ completely ignored the fact that Ms. Strong had to stand up at the hearing while testifying (Tr. 78)." (Doc. 14 at 21.)

Although when questioned at a hearing about whether she had difficulty sitting, Plaintiff testified "I can't sit too long," and stated that she had to stand up, which she apparently did, the record does not disclose how long she stood and how long she sat. (Tr. 77–79.) Thus, the record does not contradict the ALJ's finding that Plaintiff's testimony that she couldn't sit too long or could sit for only 15-20 minutes at a time was inconsistent with how long she sat at the hearing. (Tr. 78.) Moreover, the undersigned recommends that any error was harmless. It is

17

apparent from the ALJ's decision that she relied primarily on Plaintiff's treatment records to discount her credibility and to formulate the RFC. The fact that Plaintiff indicated that she had to stand up at the hearing, and apparently did so, even if overlooked or forgotten by the ALJ, would not have changed the ALJ's analysis, which, as discussed herein, is supported by substantial evidence.

### V.     Conclusion

The Court does not make independent factual determinations, re-weigh the evidence or substitute its decision for that of the ALJ. Thus, the question is not whether the Court would have arrived at the same decision on *de novo* review; rather, the Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and are supported by substantial evidence. Applying this standard of review, the undersigned respectfully recommends that the ALJ's decision be affirmed.

Accordingly, it is respectfully **RECOMMENDED** that:

1.     The Commissioner's decision be **AFFIRMED.**

2.     The Clerk of Court be **DIRECTED** to enter judgment accordingly and close the file.

**DONE AND ENTERED** at Jacksonville, Florida, on September 8, 2015.

_____
JOEL B. TOOMEY
United States Magistrate Judge

Copies to:

The Honorable Marcia Morales Howard
United States District Judge

Counsel of Record